UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHRISTOPHER RHYNES, et al.,

Plaintiff,

v.

PCA CENTRAL CALIFORNIA CORRUGATED, LLC, et al.,

Defendants.

No. 2:26-cv-01552-DJC-CKD

ORDER

Plaintiff Christopher Rhynes filed this case as a class action in California state court. Defendants removed the case to this Court under the Class Action Fairness Act ("CAFA"), additionally asserting that Section 301 of the Federal Labor Management Relations Act ("LMRA") pre-empts Plaintiff's otherwise state law-based causes of action, thereby creating federal question jurisdiction. Pending before the Court is Plaintiff's Motion to Remand (ECF No. 13), which argues in part that Defendants failed to establish the requisite amount in controversy for CAFA jurisdiction. For the reasons stated below, Plaintiff's Motion is denied.

**BACKGROUND**

Plaintiff Christopher Rhynes filed this case on behalf of himself and other employees similarly situated against Defendants in the Superior Court for the County

of Sacramento. Plaintiff alleges Defendants failed to pay overtime and minimum wages, pay wages when due, pay sick wages, provide or compensate for missed meal and rest breaks, and reimburse business-related costs as well as waiting time penalties and wage statement violations. (Compl. (ECF 1, Ex. A) at ¶¶ 47–118.) Based on these allegations, Plaintiff brings claims under the California Unfair Competition Law (UCL), Cal. Bus. & Profs. Code §§ 17200, et seq.; Cal. Lab. Code §§ 1194, 1197, 1197.1, 510, 226.7, 512, 226, 2802, 201, 202, 203, 233, and 246.

Defendants timely removed this action under CAFA, codified at 28 U.S.C. § 1332(d). (*See* Not. Removal (ECF No. 1).) Plaintiff then moved to remand this action. (*See* Mot. (ECF No. 13).) Briefing on Plaintiff's Motion to Remand is now complete. (Mot.; Opp'n (ECF No. 16); Reply (ECF No. 17).) The Motion was taken under submission without oral argument pursuant to Local Rule 230(g). (*See* ECF No. 19.)

**LEGAL STANDARD**

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district . . . where such action is pending." 28 U.S.C. § 1441(a). Under CAFA, the federal courts have original jurisdiction over class actions in which the parties are minimally diverse, the proposed class has at least 100 members, and the aggregated amount in controversy exceeds $5 million. *See* 28 U.S.C. § 1332(d)(2), (d)(5)(B).

A defendant removing a class action filed in state court pursuant to CAFA need only plausibly allege in the notice of removal that the CAFA prerequisites are satisfied. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). However, the plaintiff can then contest the amount in controversy by making either a "facial" or "factual" attack on the defendant's jurisdictional allegations. *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020). "A facial attack accepts the truth of the [defendant's] allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." *Id.* (internal quotation marks omitted) (quoting *Leite v. Crane Co.*,

749 F.3d 1117, 1121 (9th Cir. 2014)). A factual attack, on the other hand, contests the truth of the allegations themselves. *Id.* When a plaintiff mounts a factual attack, they "need only challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence." *Id.* at 700.

"When a plaintiff mounts a factual attack, the burden is on the defendant to show, by a preponderance of the evidence, that the amount in controversy exceeds the $5 million jurisdictional threshold." *Id.* at 699. Specifically, when a plaintiff's complaint does not quantify damages, defendants must show that the amount in controversy exceeds the jurisdictional threshold by a preponderance of the evidence. *See Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 849 (9th Cir. 2020). A defendant "is only required to show that it is more likely than not that Plaintiff's maximum recovery reasonably could be over $5 million." *Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1185 (E.D. Cal. 2020). This burden is not daunting as "a removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204–05 (E.D. Cal. 2008) (internal quotation marks omitted).

Rather, in making this showing, a removing defendant "must be able to rely 'on a chain of reasoning that includes assumptions.'" *Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022) (quoting *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015)); *see also Jauregui*, 28 F.4th at 993 (explaining that a "CAFA defendant's amount in controversy assumptions in support of removal will always be just that: assumptions"). These assumptions must reflect more than "mere speculation and conjecture." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). Such assumptions require "some reasonable ground underlying them," *id.* at 1199, but they "need not be proven." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019). Assumptions may be reasonable if they are "founded on the allegations of the complaint." *Id.* at 925. Parties may also "submit

evidence outside the complaint, including affidavits or declarations, or other summary-judgment type evidence." *See Ibarra*, 775 F.3d at 1197 (internal quotation marks omitted).

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). The Supreme Court has advised, however, "that no antiremoval presumption attends cases invoking CAFA" in part because the statute was enacted "to facilitate adjudication of certain class actions in federal court." *Dart Cherokee*, 574 U.S. at 89 (citations and quotations marks omitted). "CAFA's provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Id.* (internal quotation marks omitted); *see also Ibarra*, 775 F.3d at 1197.

**ANALYSIS**

The Parties do not dispute that they are diverse or that the proposed class has at least 100 members. The only issue before the Court regarding CAFA jurisdiction is whether the amount in controversy exceeds $5 million.

**I. Plaintiff Brings a Factual Challenge to Jurisdiction**

Plaintiff contests the truth of Defendants' allegations in the Notice of Removal. Plaintiff asserts that Defendants' assumptions of the facts underlying Plaintiff's claims are unsupported by the language in the Complaint and are unreasonable, absent supporting evidence. (*See, e.g.*, Mot. at 5 ("[T]he NOR is not supported by any evidence whatsoever, only by unreasonable assumptions and missing information and data points"); Reply at 1 ("Defendants' Opposition still suffers from committing the well recognized error of assuming unsupported violation rates").) Plaintiff's arguments constitute a factual challenge to Defendants' invocation of CAFA jurisdiction as each challenges the facts Defendants assume underly Plaintiff's claims. *See Harris*, F.3d 980 at 701 (concluding plaintiff's "motion to remand raised a factual challenge" to defendant's assumptions that all class members "worked shifts long enough to be

eligible for meal and rest periods"). Therefore, as Plaintiff makes a factual attack, the burden is on Defendants to establish by "competent proof" and a preponderance of the evidence under the same standard as at summary judgment that the amount in controversy exceeds the $5 million jurisdictional threshold. *See id.* at 700–01 (quoting *Salter v. Quality Carriers*, 974 F.3d 959, 964 (9th Cir. 2020)).

**II. Differences between Defendants' Notice of Removal and Opposition**

Plaintiff's complaint states that the amount in controversy for Plaintiff's aggregated claims is "under five million dollars ($5,000,000)." (Compl. at ¶ 28.) Since Plaintiff does not affirmatively specify an amount in controversy, Defendants thus present their own amount-in-controversy calculations. In their Notice of Removal, Defendants assert the total amount in controversy is $11,824,361, consisting of $893,270 for unpaid minimum wages, $2,679,756 in meal break violations, $2,679,756 in rest break violations, $494,785 in unreimbursed business expenses, $2,711,923 in waiting time penalties, and $2,364,872 in attorneys' fees. (*See* Not. Removal at 13, 14, 15, 16, 18). In contrast, in their Opposition, Defendants assert the total amount in controversy is, at a minimum, $12,685,501, consisting of $548,280 for unpaid minimum wages, $3,289,683 for meal break violations, $3,289,683 for rest break violations, $308,832 in unreimbursed business expenses, $2,711,923 for waiting time penalties, and $2,537,100 in attorney's fees. (*See* Opp'n at 13-14.) In calculating the new amounts contained in their Opposition, Defendants both adjust several assumptions regarding violation rates, and apply these adjusted assumptions to HR and payroll data contained in an attached declaration.

Courts can construe both a defendant's opposition and evidence provided after the notice of removal as amendments to the original notice of removal. *See Gen. Dentistry For Kids, LLC v. Kool Smiles, P.C.*, 379 F. App'x 634, 636 (9th Cir. 2010) (explaining that Ninth Circuit precedent "holds that a district court may consider later-provided evidence as amending a defendant's notice of removal"); *Pro 49 Dev., LLC v. Ness Express 1, LLC*, No. 2:24-cv-01850-JAM-JDP, 2024 WL 4542306, at *1 (E.D. Cal.

Oct. 22, 2024) (explaining that "district courts have routinely considered filings other than the notice of removal when determining whether [they have] jurisdiction").

Therefore, the Court construes Defendants' Opposition as an amendment to its Notice of Removal and will base its decision on the calculations therein.

**III. Amount in Controversy**

In opposing the Motion to Remand, Defendants offer a declaration from Andrei Morales, an HRIS Manager at Defendant PCA. (Morales Decl. (ECF No. 16-3).) The Declaration attests to his personal knowledge of the company's HR and payroll systems and practices. (*Id.* ¶¶ 1-3.) This Declaration relies on PCA's HR and payroll records containing information for all non-exempt California employees employed by Defendants from February 17, 2022 to March 6, 2026 – the relevant period for Plaintiff's California Class, and including the shorter, three-year time period for Plaintiff's alleged subclass. (*Id.* ¶ 3.) Based on these records, Morales identifies during the relevant period: (a) the number of non-exempt employees employed in California; (b) the total number of workweeks worked by these employees; (c) the average hourly rate for non-exempt California employees; (d) the average shift length; (e) and the number of wage statements issued. (*Id.* ¶¶ 5–10.) Based on the data reviewed by Morales, Defendants estimate an amount in controversy of $12,685,501. (*Id.*) Plaintiff argues the assumed violation rates used in these calculations, and therefore the calculations themselves, are unreasonable and unsupported.

**A. Defendants' Assumptions Regarding Violation Rates for Meal Break Violations, Rest Period Violations, and Number of Class Members Entitled to Waiting Time Penalties are Reasonable and Supported.**

Plaintiff argues that Defendants' calculations of the amount in controversy are unreasonable and unsupported because Defendants do not "point to any 'real evidence' that was the basis for [Defendants'] purported assumptions." (Reply at 4.) According to Plaintiff, the Morales Declaration and the calculations contained in Defendants' briefing do not meet Defendants' burden of proof because Defendants

"[do] not proffer any evidence, such as details regarding the frequency or nature of the alleged violations, in support of the violation rates used in [Defendants'] calculations." (*Id.* at 5.)

However, Defendants are "permitted to rely on 'a chain of reasoning that includes assumptions" to calculate the amount in controversy for removal under CAFA. *Arias*, 936 F.3d at 925. These assumptions need "some reasonable ground underlying them," *Ibarra,* 775 F.3d at 1199, but they "need not be proven." *Arias*, 936 F.3d at 927. Specifically, the Ninth Circuit has explained that "it makes little sense to require a CAFA defendant to introduce evidence of the violation rate—really, the *alleged* violation rate—because the defendant likely believes that the real rate is zero and thus that the evidence does not exist." *Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025).

Here, Defendants' assumptions regarding the frequency of meal break violations, rest break violations, and scope of waiting period violations rest on reasonable grounds because, as described below, they are based on the allegations from Plaintiff's complaint and supported by evidence contained in the Morales Declaration.

**B. Meal Breaks**

Plaintiff's allegations of missed meal breaks lack specificity about the frequency of such occurrences. Rather, Plaintiff alleges that Defendants "from time to time failed to provide all the legally required off-duty meal breaks" to putative class members. (Compl. ¶ 90.) The Complaint further alleges that "[a]s a result of their rigorous work schedules" Plaintiff and putative class members "were from time to time not fully relieved of duty by Defendant for their meal periods." (*Id.* (emphasis removed).) Elsewhere in the Complaint, Plaintiff alleges that "[a]s a result of their rigorous work schedules, Plaintiff and other California Class Members were from time to time unable to take thirty (30) minute off duty meal breaks and were not fully relieved of duty for their meal periods." (*Id.* at ¶ 14 (emphasis removed).) Plaintiff further alleges that

these missed meal breaks occurred "in accordance with Defendant's strict corporate policy and practice." (*Id.* at ¶ 91 (emphasis removed).) Defendants estimate, based on Plaintiff's allegations, one missed meal period per workweek, or a violation rate of 20 percent. (Opp'n at 9-10.)

Based on these descriptions of the violations in Plaintiff's Complaint, this Court finds Defendants' assumption of one meal period violation per workweek to be reasonable. Courts have found similar, and higher, estimates of violation rates to be reasonable when Plaintiffs have alleged a "policy and practice" of meal break violations occurring "from time to time." *See, e.g.*, *Serrieh v. Jill Acquisition, LLC.*, 707 F. Supp. 3d 968, 974-75 (2023) (finding an estimated violation rate of one missed meal period per week reasonable when complaint alleged that defendants "from time to time failed to provide all of the legally required off-duty meal breaks."); *Sanchez v. Abbott Lab'ys*, No. 2:20-cv-01436-TLN-AC, 2021 WL 2679057, at *4–5 (E.D. Cal. June 30, 2021) (deeming the assumption of three non-compliant meal breaks per week reasonable when the complaint alleged a "'pattern and practice' of meal period violations"); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (holding assumption that employees missed three out of five eligible meal periods each week reasonable where complaint "offered no guidance as to the frequency of the alleged violations, only that defendant had 'a policy and practice' of meal and rest period violations").

Defendants have also provided evidence supporting the reasonableness of this assumption and their calculations. The Morales Declaration establishes that approximately 99 percent of shifts were of a length eligible for a meal break.[1] Based on the extremely high percentage of shifts eligible for a meal break and Plaintiff's allegation of a "strict corporate policy and practice" of denying employees premium pay when meal breaks were missed, the Court finds Defendants' assumption of one

[1] The Morales Declaration attests that "of the 123,533 workweeks, approximately 99% shifts were over six (6) hours and approximately 91% were over eight (8) hours." (Morales Decl. ¶ 6.)

meal break violation per week reasonable. This places $3,289,683 ($26.63 [average hourly rate of pay for non-exempt employees] x 123,533 [number of workweeks]) into controversy for this claim.

**C. Rest Breaks**

Defendants' rest break calculation is also reasonable and supported by evidence. Despite Plaintiff's assertion that Defendants have estimated a 100 percent violation rate (*see* Reply at 6), Defendants in their Opposition in fact estimate one missed rest break per workweek, or a 20 percent violation rate, based on the allegations contained in Plaintiff's complaint. (Opp'n at 11.)

Similar to their allegations regarding meal break violations, Plaintiff's complaint does not allege the specific frequency of rest break violations. Instead, Plaintiff alleges that "during the California Class Period," Defendants' policies required putative class members "from time to time to work in excess of four (4) hours without being provided ten (10) minute rest periods. Further, these employees were denied their first rest periods of at least ten (10) minutes for some shifts worked of at least two (2) to four (4) hours from time to time, a first and second rest period of at least ten (10) minutes for some shifts worked of between six (6) and eight (8) hours from time to time, and a first, second and third rest period of at least ten (10) minutes for some shifts worked of ten (10) hours or more from time to time." (Compl. at ¶ 15 (emphasis removed).) The Complaint additionally alleges that "[a]s a result of their rigorous work schedules, Plaintiff and other California Labor Sub-Class Members were periodically denied their proper rest periods by Defendant and Defendant's managers." (Compl. at ¶ 94 (emphasis removed).)

Plaintiff disputes that their allegations give rise to an assumption that rest break violations occurred every workweek. (*See* Mot. at 11-12). However, district courts in the Ninth Circuit, when presented with similarly imprecise allegations about the frequency of missed rest breaks, have deemed equally and less conservative assumptions than Defendants' to be reasonable. *See, e.g.*, *Serrieh,* 707 F. Supp. 3d at

975 (finding assumption that employees missed one rest period per week reasonable when Plaintiff alleged "employees were from time to time required to work in excess of four hours without being provided ten-minute rest periods."); *Bryant*, 284 F. Supp. 3d at 1151 (holding assumption that employees missed three out of ten eligible rest periods each week reasonable where complaint "offered no guidance as to the frequency of the alleged violations, only that Defendant had a 'policy and practice' of meal and rest period violations"); *Stanley v. Distribution Alternatives, Inc.*, No. 5:17-cv-02173-AG-KK, 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (holding three missed rest breaks per week was a reasonable assumption to draw from a complaint that alleged a "pattern and practice" of wage and hour violations but "offer[ed] no guidance as to the frequency of these violations"). Accordingly, the Court finds Defendants' assumption of one missed rest period per workweek to be reasonable. $3,289,683 ($26.63 [average hourly rate of pay for non-exempt employees] x 123,533 [number of workweeks]) is therefore in controversy for this claim.

**D. Waiting Time Penalties**

Defendants' calculation of penalties for their alleged failure to timely pay wages to discharged or quitting employees under Labor Code section 203 (known as "waiting time penalties") is similarly reasonable and supported by competent proof. The Complaint does not specify the rate of waiting time penalty violations – stating instead that Plaintiff "demands thirty days of pay as penalty for not paying all wages due at time of termination for <u>all employees who terminated employment</u>," in the past three years. (Compl. at ¶ 112) (emphasis added). Based in part on this allegation from the Complaint, Defendants assumed that all non-exempt employees who separated from employment in the past three years were potentially entitled to waiting time penalties. (*See* Opp'n at 12-13.) Based on figures contained in the Morales Declaration, Defendants assert that 472 employees terminated their employment with Defendants in the previous three-year period, and use this number to calculate the amount in controversy for this claim. (Opp'n at 13.)

In their Motion, Plaintiff disputes Defendants' assumptions underlying their calculation of the number of employees eligible for waiting time penalties, arguing that Defendant did not provide evidence "suggesting how many of the . . . terminated employees were full-time employees, as opposed to part-time employees." (Mot. at 14.) However, the Morales Declaration supplies such evidence. According to the Morales Declaration, 472 non-exempt employees separated from Defendants' employment in the relevant period, and were paid an average hourly rate of $23.94. (Morales Decl. at ¶ 11.) The Morales Declaration also notes that 100 percent of non-exempt employees employed by Defendants in the previous four-year period (which includes the three-year period covered by Plaintiff's waiting period violation claims) were classified as full-time, and worked an average shift length of approximately 9.2 hours, with 91 percent of those shifts lasting longer than eight hours. (*Id.* at ¶ 6.) Based both on Plaintiff's Complaint's plea for penalties on behalf of "all employees who terminated employment", as well as on the evidence contained in the Morales Declaration, the Court finds reasonable Defendants' assumption that 472 former employees would potentially be eligible for waiting time penalties.

This places $2,711,923 into controversy for this claim, calculated by multiplying (472 [number of terminated employees] x 8 hours x $23.94 [average rate of pay for the terminated employees] x 30 days [time period of penalties requested in Plaintiff's Complaint]).

* * *

The total amount in controversy on these claims alone is $9,291,289 ($3,289,683 [meal breaks] + $3,289,683 [rest breaks] + $2,711,923 [waiting time penalties]). As this amount exceeds the jurisdictional amount in controversy threshold and the diversity of the parties is undisputed, the Court has diversity jurisdiction over this case.

## CONCLUSION

This amount exceeds the requisite amount even without consideration of potential liability flowing from Plaintiff's claims concerning damages for unlawful business practices, failure to pay minimum wages, failure to pay overtime compensation, failure to provide accurate wage statements, failure to reimburse business expenses, failure to pay sick wages, and attorneys' fees. Therefore, this Court holds Defendant has established by a preponderance of the evidence that CAFA's amount-in-controversy requirement is satisfied. As this Court has diversity jurisdiction over this case based on CAFA, this Court does not need to decide whether it has federal question jurisdiction under Section 301 of the LMRA.

For the reasons stated above, IT IS HEREBY ORDERED that Plaintiff's Motion to Remand (ECF No. 13) is DENIED.

IT IS SO ORDERED.

Dated: **August 3, 2026**

Daniel J. Calabretta

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC9 – Rhynes26cv01552 MTR